The final case on the calendar is the United States v. Guzman. Okay, Mr. McGuire, whenever you're ready. Thank you. Good morning. Good morning. I'd actually like to begin with the government's 28J letter, in which they identified the case of United States v. Griffin, in which a panel of this court summarily affirmed another decision of this same district judge under broadly similar circumstances. Now, I think it would be easy to point out the differences between this case. Mr. Griffin was a case in which, in fact, defense counsel below did not object to application and the intense reliance on this notion of incremental punishment at all. It was a question of plain error. You've got five minutes, and I'm particularly interested in your views as to why Judge Shea views his expressions. Certainly. So I think the fundamental problem here is that Judge Shea adopted a methodological approach that is not contemplated by 18 United States Code 3553A, which is intended to channel the judge's granted considerable discretion. But it is intended to set out a set of very important factors. And none of those factors says that a judge can or should essentially defer to what a prior judge has done. That's not what he did here. Judges all the time consider what punishments a defendant has previously received, especially if it's for a similar activity. And in assessing enumerative factors such as deterrence, what will deter this defendant from doing this again, consider whether or not the punishment needs to be equal to that, greater than that, maybe not. Judges do that all the time. If you have an illegal reentry case where a guy comes back into the United States, he's convicted, and you give him three years for illegal reentry, and a month later he comes back again, isn't it permissible for the judge to say, look, three years wasn't enough to deter him. I need to give him something more than three years. You're not suggesting that would be impermissible if you tie it to deterrence or to protection of the public? So I think that there are two important points here. One, I think that absolutely a judge weighs, and Michaud suggests that among the things that judges weigh is the question of what is someone's history. That does include prior cases. But it does not permit the court to set a floor that says, and I think particularly the problem— I understand why you're concerned about that. I agree with you. But he specifically said otherwise. He said, I don't always do it. I don't always follow that. It depends on the case. He specifically said—if there was a concern that he thought you have to give more time for purposes of deterrence, that would be problematic. But he specifically said, I generally find incremental sentencing to be sound reasoning. I don't follow it in every case. Sometimes there are exceptions. So he was not suggesting there was a floor that he couldn't go below. He's just saying, in this case, I think he needs more time. So we are not suggesting that Judge Shea was unaware of his ability to use different logic. But the fact is, in this case and in other cases, he adopts and expressly adopts a methodological approach. Certainly he may not use it in other cases. But the function, when it is used, as it was absolutely used here, to drive the sentence and to exclusively drive the sentence, was to abdicate that responsibility. The sentence wasn't driven exclusively by his prior sentences. The sentence was driven in large part by your client's recidivism. So what I would point the court to is Judge Shea's words. Having expressed the notion of incremental punishment, said, ultimately, that that's ultimately what will drive the sentence here. Well, you take that out of context. I mean, he qualified that in the phraseology that just Bianco just quoted to you. And also he went through a bunch of other mitigating things, his age and the fact that he had a job. He clearly didn't just say, I'm only going to consider this. He went through all the other – he went through each factor, actually, and explained why it either weighed against your client or in favor of your client. So it wasn't to the exclusion of the other factors. He just felt in this particular case that deterrence was the driving factor, right? I would disagree. Again, Judge Shea was not unaware of what other considerations were. The question is, ultimately, in crafting a sentence, did Judge Shea rely upon and weigh, properly weigh, these other factors? Or to the – having identified them, did he essentially discard them in preference for a single governing factor? So even though he mentioned them all and went through them, you think he discarded them – he didn't consider them? Or he just felt like in this case deterrence outweighed all of those? Isn't that what he basically said? I think that in this case he determined that there was a single governing factor and anything inconsistent with that. And he did give your sentence – your client a sentence well below the advisory guideline, right? So that's a good point. He gave my client a sentence below the crack cocaine guideline range, but double the high end of the range of the one-to-one range, which, as a matter of practice in the District of Connecticut, is in essentially all cases, including by agreement of the U.S. Attorney's Office these days, the governing range. And so in terms of what is the heartland of what sentences do people actually receive? What do the guidelines suggest? In practice, it was 24 to 30 months. No break is what you're telling me. Why was he a career offender if he had three prior convictions that involved distribution of drugs and this one also? Under the guidelines, why wasn't he classified as a career offender? I just didn't understand that. Certainly. So we are in a situation where the career offender guidelines are determined through a set of quite technical rules. Some convictions in Connecticut can qualify under those rules. Others don't. These don't qualify involving distribution? Why wouldn't they qualify? It's clear they involve distribution. So the long answer is that Connecticut's statute governing drug distribution involves, one, various activities, not all of which are covered by federal law, and also for periods of time have included drugs that are not scheduled. All right. Whatever peculiarities there are about Connecticut, well, and how it's classified, the bottom line is he had four prior convictions, including three that involved distribution, two that involved guns, and this one obviously involved fentanyl and crack. And you want us to conclude that a five-year sentence for someone with that criminal history is substantially unreasonable, shockingly high? And, again, yes, this is a case in which I would say, again, the heartland in Connecticut for cases, including folks with some of these records, is lower than that. All right. I'll reserve it. All right. We'll hear from the government. Good morning, Your Honors. Stephanie Lovick, Assistant U.S. Attorney for the District of Connecticut on behalf of the United States of America. May it please the Court. The issues before you are fairly straightforward and simple. As you've just discussed with the defense counsel, Judge Chay was appropriately considered the 3553A factors when he fashioned the sentence, a below-guideline sentence, for Mr. Guzman. He considered each and weighed each in coming up with the 60-month sentence. But it wasn't a below-guideline sentence once he adjusted the crack ratio, right? It's an above-guideline sentence for the guideline that he calculated, right? That is correct. I mean, technically, under the guidelines that were in effect and based on the 18-to-1 ratio, it was a below-guideline sentence. But as you correctly mentioned, applying the 1-to-1 ratio, it did reduce it to a 24-to-30-month range. And so it was effectively double that. So I would say it was somewhere in between. I think the main issue here is whether Judge Chay afforded the proper amount of weight to the need for incremental punishment, which here I would submit was a proxy for the need for specific deterrence for this particular defendant who, as Judge Bianco just mentioned, had a long history of similar offenses for drug trafficking involving similar types of narcotics and, in several of the cases, firearms and ammunition. And I would just note that in his last offense, he was also on parole when he committed that final offense, which suggested to Judge Chay that this particular defendant was not very deterred by the prior sentences that had been previously imposed on him. I would submit that this sentence was substantively reasonable and supported by the record. Starting on page 122 of the record, Judge Chay meticulously goes through each of the factors that he considered, both the seriousness of the offense, his criminal history, which I just mentioned. Should we be concerned at all about the way in which the incremental punishment aspect of this was considered by the judge? It seems a little imprecise, and although he's not creating a floor in talking about how to consider incremental punishment, there's this language about, okay, you start with this, and which multiplier should I factor in? And it has the feel of some type of formula, almost, in talking about this. I would submit that there is no concern here, because while he did use the words that you just described, multiplying factors, he didn't actually use any sort of multiplying factor. I think that there would be a concern if Judge Chay had said, for these types of crimes, I use a multiplier of two or a multiplier of three, because that would essentially dismiss the requirement that judges take an individualized approach to sentencing for each particular defendant. And that's not what Judge Chay did here. He considered both the serious factors that weighed in favor of a longer sentence, as well as the mitigating factors, including Mr. Guzman's difficult upbringing, which he noted was difficult, but not unusually so, his efforts at unemployment, which were a little bit spotty, and other factors that weighed in favor of a lower sentence. I would also add, he considered his medical condition, which at the time of sentencing was a little bit up in the air and unknown, because he had been in remission, and Judge Chay also noted that while he had some serious medical condition, it did not deter or stop him from injecting poisons into the community, such as fentanyl. And so, in sum, I would submit to the court that the sentence was substantively reasonable, well within the range of permissible sentences for this type of offense, and in light of all the factors that Judge Chay considered. And unless the court has additional questions, I would rest on our papers. Thank you. Thank you. Mr. McGuire, you have one minute. Thank you, and Judge Ali, I think that pointing to the court's emphasis on this question, what's the multiplier, is fundamentally the problem here, and I think it's absolutely correct that that is a formula. And it's, in fact, even worse than a formula that… Would you argue to us that the sentence that Judge Chay gave your client was outside of the perimeters of reasonableness procedurally and substantively? We do, and I understand the question about substantive outcome as a five-year sentence. But even before that, is this question of the manner in which Judge Chay reasoned his way to this, and it's a formula. It's a formula that we already did. No, it's just not true. You keep saying it's a formula, but he was – Judge Chay was very express about the limitations on the approach he was taking. He said he didn't use it all the time. Sometimes he does. So you've got a client like yours who is a big-time recidivist, can't conform his conduct to what the law requires. So Judge Chay's got a problem. He's got to deal with it, so he gives him more time. What's wrong with that? Every judge in the circuit does something like that from time to time. And there might be a way to get there and a reasoning that could explain why a specific person with a specific set of characters that includes their history. I read the record. I understand what he was doing. I'm not sure I see the lack of clarity that you're urging on us. You know the record better than I do. I appreciate the question. I do not think there is a lack of clarity. I think in some ways, unlike Griffin, this was a case in which Judge Chay was crystal clear about what he was doing, and he was not looking to the specific nuances of this person. He laid them all out. I didn't learn about your client because I was representing him. I learned about your client from reading the record you all supplied me. And again, to be clear, the claim is not that Judge Chay was unaware of the facts of the case or of the considerations he could consider. It's that he was aware of them, and he deliberately and very clearly chose a single consideration that is not a permissive consideration. Do you think the partial sentence he gave your client was a mischaracter of justice? I absolutely do. On this issue, I just want to ask about the multiplier. He did mention the word multiplier, but he didn't apply any multiplier here, right? And thank you for that question because I think the government suggests, well, you know, is there something that says it's one and a half, it's two. He said it doesn't need to be twice as long, and so he begins by suggesting in a multiplier, well, maybe I'm thinking that direction, but then he's led to my own sense is something that's a good 15, 16 months longer in terms of actual time served is sufficient. It's a very fuzzy formula that ultimately leads to him relying in this respect only on something that is his own sense, which is, of course, a problematically vague use of discretion within this formula. Okay. Thanks, Mr. McGuire. Thanks both of you. We will reserve decision. Have a good day. Thank you both. Thank you both for the work you do.